BAKER *v.* UNION TRUST CO.

1. Bills and Notes—Accommodation Paper—Evidence.
   A promissory note was found, from the evidence, to have been made for the accommodation of the payee.

2. Same—Payment—Subsequent Transferee.
   The indorser of a note made for his accommodation became insolvent, and the holder, to protect himself, bought the indorser's assets at auction. Afterwards a bank, another creditor, with a view to making its claim, proposed to purchase the assets and employ the indorser to continue the business, to which the indorser agreed on condition that the bank secure an assignment of the note. Accordingly the indorser, acting for the bank, purchased the assets and note, the note, by his direction, being assigned to his wife. *Held*, that, the indorser's agreement with the bank constituting the consideration for the transfer of the note to the wife, the transaction amounted to a payment of the note, and hence a transferee from the wife, with notice, could not enforce it against the estate of the maker, on the theory of a succession to the rights of the original *bona fide* holder.

Appeal from Wayne; Rohnert, J. Submitted January 30, 1902. Decided March 4, 1902.

Bill by the Commercial Bank of Port Huron against Samuel G. M. Gates and the Union Trust Company for the appointment of a receiver for the estate of said Gates. The trust company having been appointed as such receiver, Baker, Schwartz & Dake presented a claim against the estate, which was disallowed, and they appeal. Affirmed.

*Adolph Sloman*, for claimants.

*Russel & Campbell*, for the receiver.

Montgomery, J. The original cause was instituted for the purpose of having a receiver appointed of property

transferred by Samuel G. M. Gates for the benefit of his creditors.   Baker, Schwartz & Dake intervened, claiming to be the owners of a certain note made by Gates on the 18th of June, 1896, payable to the order of Frank T. Sullivan, and indorsed by Frank T. Sullivan.   The receiver contests the allowance of this claim upon the ground that the note was without consideration as between Gates and Sullivan, and was made for Sullivan's accommodation, and claims further that the note was satisfied, after it became due, by an adjustment between Sullivan and Uptegrove & Bro., of New York, by whom it had been discounted before maturity.   The circuit judge sustained the contention of the receiver, and the petitioners appeal.

Without attempting to review in detail the testimony upon the subject, we are satisfied that the contention that the note was made for the accommodation of Sullivan is fully sustained by the record.   The letter of Gates accompanying the note when sent to Sullivan states that it was made for Sullivan's accommodation, and was for Sullivan to pay, and this is supported by the testimony of Gates himself.

The petitioners, however, claim that Uptegrove & Bro. became good-faith purchasers of this note, and that they afterwards transferred the note to Mrs. Sullivan, and Mrs. Sullivan transferred it to the claimants, and that they are entitled to stand in the position of Uptegrove & Bro., as good-faith purchasers.   It appears that Sullivan failed in 1896, owing Uptegrove & Bro. on an open account about $2,000, besides the note in question.   For the purpose of protecting themselves, Uptegrove & Bro. bought at public auction from Sullivan's assignee a large portion of Sullivan's assets.   A short time afterwards the First National Bank of Tonawanda, one of Sullivan's creditors, conceived the idea of purchasing all of Sullivan's assets and employing Sullivan to go on with his business in the hope of realizing enough in that way to make them good on their account.   Sullivan agreed with the bank that he would engage to enter their employ to dispose of the assets which

they purchased from Uptegrove & Bro., on condition that they would secure an assignment from Uptegrove & Bro. of their claim against him arising from the open account and the note in question. The bank consented to this, and Sullivan, acting for the bank, purchased the Sullivan assets which Uptegrove & Bro. had acquired at the auction sale, and also bought the Uptegrove & Bro. claim against him, and paid Uptegrove & Bro. for the same. The note in question was surrendered by Uptegrove & Bro., but assigned, at Sullivan's direction, to his wife, Mrs. Sullivan. It is the contention of the claimants that Mrs. Sullivan furnished the consideration for this transfer by putting up her notes to the amount of $18,000 to the First National Bank of Tonawanda. But there is a written contract between the First National Bank of Tonawanda, of the first part, Clara Sullivan, of the second part, and Frank T. Sullivan, of the third part, in which the consideration for the giving of the notes by Clara Sullivan is stated, and this consideration does not include the note in question. The fair inference is, therefore, that the only consideration for the transfer of this note to Clara Sullivan was that furnished by her husband's agreement to engage in the service of the bank, and thereby to enable Uptegrove & Bro. to make the sale to the bank; and this was deemed a consideration passing to Uptegrove & Bro., for which they entered into an agreement reciting a consideration of $1 to them paid by Clara Sullivan, and agreeing to transfer to her any sum that might be realized out of the estate of Frank T. Sullivan on the note in question, as well as on the open account against Frank T. Sullivan. The petitioners were the attorneys acting for Sullivan in this entire transaction, and were familiar with all the details of it. Subsequently Frank T. Sullivan became indebted to the petitioners for services, and the note in question was assigned to them in payment of this claim.

As we construe the transaction, it amounted to this: Sullivan was liable upon this note, on its face, as an indorser. As between himself and Gates, he was the principal. He furnished the consideration which satisfied the holders,

Uptegrove & Bro., and their agreement to transfer it by his direction to his wife did not confer any rights upon her which Sullivan himself could not have asserted. The note must be treated as having been paid by this transaction. It is, of course, clear that in the hands of Sullivan the note could not be enforced, and, having reached and passed through his hands, to the knowledge of the petitioners, they stand in no better position. See *Kost* v. *Bender*, 25 Mich. 515.

The order disallowing the claim will be affirmed, with costs.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.